Richard Bracy was indicted for the murder of Pratt Kindall Sanders in violation of Alabama Code 1975, § 13A-6-2. A jury convicted him of manslaughter. He was sentenced as a habitual offender to 25 years' imprisonment. Two issues are raised on appeal.
 I
The defendant argued that he was denied due process of law by the failure of the State and defense counsel to secure the presence of his brother, a co-defendant, at trial. *Page 1134 
The defendant's brother, Larry Bracy, was also indicted for Sanders' murder. He pled guilty on March 11, 1982, and received a 25-year sentence. Initially, he was a state prisoner but "he got shipped up to Leavenworth, Kansas, [as] a state prisoner being boarded in a federal institution." The prosecutor and the trial court made several attempts to secure Larry's presence at the defendant's trial. The trial judge found that delays were encountered "really because of basically an argument over funding, Jefferson County and the State of Alabama." When that was finally worked out, it was learned that "Larry Bracy would not be available as a witness for us because he was charged with killing an inmate in a federal institution, which, of course, is a federal crime and which made him subject to federal custody."
Defense counsel could not stipulate to Larry Bracy's expected testimony because "I'm not certain what he would say" although counsel did state that Larry Bracy would testify that "he did the shooting." Defense counsel specifically stated that he was satisfied that the State had made "a bona fide effort to get him here." Defense counsel had not communicated with Larry by mail or by phone. The defendant had received letters from his brother but they did not "pertain to what he would say if he were here in court."
The trial court found that "everybody has done what they can do under the circumstances" and even offered to accept a stipulation of what Larry's testimony would be. Furthermore, the trial court went even further: "If there is anything that he told you [defense counsel], you being an officer of the court and so forth, if he told you anything that bears on these issues, I'll let you stand up here and tell the jury what he's told you." This offer was not pursued after an off-the-record discussion.
The State's evidence showed that on May 23, 1981, Pratt Kindall Sanders died from "hemorrhage secondary to two small caliber gunshot wounds."
The victim's wife, Elizabeth Sanders, testified that she saw Larry Bracy shoot her husband through the screen door of their home when her husband invited Larry Bracy inside their home. Her husband then went out on the porch and he and Larry "started tussling". While they were tussling, the defendant ran up and grabbed Sanders "from behind" and told his brother "don't let him go . . . give it to me, man." Mrs. Sanders then ran out the back door and heard a second gunshot. She ran to a neighbor's and when she returned she saw the defendant and his brother "leaving in the car that they had come in", although she later testified that she did not see the defendant in the car that was leaving. Mrs. Sanders never saw the defendant with a gun in his hand nor did she see him shoot her husband. That concluded the State's case. The defense presented no testimony.
Nowhere in the record or in the defendant's petition for testimony are there disclosed the specific facts intended to be proved by the absent witness. "Denial of a continuance is not palpable abuse of discretion in the absence of a showing as to what the witness would testify to." Fields v. State,424 So.2d 697, 699 (Ala.Cr.App. 1982). A motion for a continuance because of an absent witness is properly overruled where the court is not informed of the nature and materiality of the evidence sought. Gast v. State, 232 Ala. 307, 310, 167 So. 554 (1936).
In this case, the absent witness was the defendant's brother. The defendant had communicated with his brother after the crime and while the brother was in the federal penitentiary. It is inconceivable to this Court that the defendant had not discussed with his brother "what he would say if he were here in court" after alleging in his petition for testimony that his brother's testimony was "crucial" to his defense. Under these circumstances, we find no error in the refusal to grant a continuance.
The defendant was convicted on December 15, 1982. In July of 1984, he filed a petition for writ of error coram nobis. To that petition he attached an order of the *Page 1135 
United States District Court for the District of Kansas denying Larry Bracy's petition for a writ of habeas corpus.
 "As grounds for this petition, Bracey [sic] alleges that he pleaded guilty to the murder of one Pratt Sanders in Alabama and was sentenced to 25 years imprisonment; that his brother, Richard Bracey, was subsequently charged with manslaughter of Sanders; that the Alabama trial judge ordered Larry Bracey's return to testify as a defense witness at his brother's trial; that he would have testified that he, rather than his brother, killed Sanders; that the warden at Leavenworth refused to permit his transfer to Alabama to testify; and that his brother was convicted. Petitioner now asks this Court to transfer him to Alabama so that he will be `available to participate in the appellate and final' stages of the criminal proceedings against his brother."
All the evidence shows that Larry Bracy shot Sanders at least once. Sanders died "as a result of exsanguination or hemorrhage secondary to two small caliber distant gunshot wounds." Mrs. Sanders, the wife of the deceased, was the only witness to testify to the events surrounding the homicide. She saw Larry Bracy shoot her husband and saw the defendant grab her husband from behind:
 "He [defendant] grabbed Pratt [deceased] from behind, got both of his arms and tried to pull them behind him, and told his brother don't let him go, don't let him go. And then after he had said that, I heard him say give it to me, man."
Mrs. Sanders then "ran out the back door" and "heard another gunshot." Any testimony from Larry Bracy that he shot Sanders would not conflict with any evidence presented by the prosecution and would not exculpate the defendant. Even if Larry Bracy were to testify that he shot Sanders both times, the defendant would still be guilty as an accomplice.
 II
The defendant's second argument obviously had its inception in the denial of Larry Bracy's petition for writ of federal habeas corpus. In denying the petition, the Federal District Court stated:
 "Petitioner states no claim for federal habeas corpus relief. An incarcerated person has no federal or constitutional right to be transferred to a distant state in order to be a witness in a court proceeding. Prior to trial, petitioner's presence at trial might have been secured by petition for writ of habeas corpus ad testificandum issued out of this Court, 28 U.S.C. § 2241 (c)(5); or his statement or deposition might have been taken and offered as evidence at trial due to his unavailability, assuming Alabama's rules of criminal procedure are similar to our federal rules. See Barber v. Page, 390 U.S. 719, 724 [88 S.Ct. 1318, 1321, 20 L.Ed.2d 255] (1968); Rule 804 (a)(5), Fed. Rules of Evidence; Rule 15 (a), (3), Fed.R.Crim.P. If these alternatives were not utilized by the State or Richard Bracey's counsel to secure petitioner's presence or testimony at trial, then Richard Bracey might have a claim of denial of due process to be presented on appeal. Nevertheless, petitioner could assert no personal right then and has no right presently to be transferred to Alabama to participate in his brother's criminal appeal."
The defendant now argues that he was denied his constitutional right to the effective assistance of counsel because his appointed trial counsel did not attempt to secure his brother's presence through a petition for writ of habeas corpus ad testificandum nor did he attempt to secure his testimony by way of deposition pursuant to Alabama Code 1975, §12-21-260.
The trial judge found that defense counsel's ignorance of the particulars of Larry Bracy's testimony was "through no fault" and that "everybody has done what they can do under the circumstances."
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was *Page 1136 
deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064,80 L.Ed.2d 674 (1984).
 "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. . . .
 "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. . . .
 "On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."
* * * * * *
 "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."
* * * * * *
 "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at ___, 104 S.Ct. at 2067-68.
In adjudicating a claim of actual ineffectiveness of counsel, the most important practical consideration in the application of these standards is that these rules are "mechanical" and "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."Strickland, 466 U.S. at ___, 104 S.Ct. at 2069.
Even at this late stage of the proceedings, we still have been afforded not even the slightest hint of what specific testimony is expected from Larry Bracy that would aid this defendant. However, in view of the federal court order set out in this opinion, to affirm now would ensure the pursuit of post conviction remedies. In order to prevent any further relitigation of the ineffectiveness claim, we remand this cause to the circuit court with directions that a hearing be held on the issue of the effectiveness of the defendant's trial counsel under the standard established in Strickland v. Washington, supra. The circuit judge who conducts this hearing is directed to make findings of fact. Those findings and a transcript of the proceedings are to be forwarded to this Court upon completion.
REMANDED WITH DIRECTIONS.
All Judges concur.
 ON RETURN TO REMAND